The first case this morning is Sun Pharmaceutical v. Incyte Corporation. Mr. Jay, when you're ready. Have you done something different with your time? I have not, Your Honor. I think the clock should be 15. The clock says, okay, yeah. You reserved four minutes, right? That's correct, Your Honor. Okay, thanks. When you're ready. Thank you very much. Good morning, Your Honors. I'm Abel, who's the court. William Jay for the appellant, formerly concert, now part of Sun. The board took a series of shortcuts in this case. And those shortcuts resulted in legal errors. And those legal errors affected how it treated motivation, how it treated reasonable expectation of success, and how it resolved the objective indicia. The board's shortcuts let it disregard two important categories of evidence. One, about the uncertainty of how deuteration affects a drug's performance in the body. And the second is the objective evidence about the efficacy of concert's deuterated product to treat AA. The board made no findings on either of those key points. And that is why we've asked this court to reverse. Insight tries to fill the gaps by citing its own evidence below. But of course, the board didn't resolve the factual disputes on these points. Are you saying the board didn't even make any findings on the predictability of deuteration and whether it would lead to success? We are basically saying that, Your Honor. And I think that the best places to look at that, to look for that, I think the top of page 31 in the board's decision, where the board says that, for reasonable expectation in particular, it's really just, I'm sorry, it's the top of page 32. It's saying that you could make the deuterated compound, and then in the alternative, that these compounds may display superior ADME properties. That's as far as it goes. It doesn't say that there's a reasonable expectation that deuterated ruxolitinib would display the properties that the board had identified as the motivation to make deuterated ruxolitinib. May display is not a reasonable expectation of success, but that's as far as the board goes. Why is may display not at least some reasonable probability of success? Can you point to any cases that say that would not be sufficient? Well, so a couple of cases about the definition of reasonable expectation, and then I would like to illustrate the context in the board's decision. But as far as the cases, this court said in Sanofi versus Watson, that reasonable expectation basically means a scientifically reasonable likelihood, and in OSI, that hope is not enough. And I think that all the board is saying here is that there's a potential. It does not evaluate the reasonableness of that potential with respect to deuterated ruxolitinib. I'm a little confused about what you're arguing, because the claims don't have specific pharmacokinetic limitations in them, right? It's just the compound claims. There are compound claims, but that has been true in each of this court's compound cases where it has assessed reasonable expectation with regard to whether the compound would be expected to display the properties that motivate you to make it. In other words, if there's a motivation to pursue a desirable property, then you wouldn't make the compound unless there is a reasonable expectation that you'd succeed. I could rattle off a whole bunch of cases that involve compound claims that don't claim the activity, Takeda, Sanofi, Pfizer, UCB, Procter & Gamble, all of them compound claims, and all of them look at, for example, whether it would be a successful compound. That's exactly what the board did not do here in the reasonable expectation. All it looked at was, could you physically carry out the process of making the deuterated compound? That is not sufficient when the motivation is to pursue the desirable ADME properties. That's what the board identifies the motivation as, but it never closes the loop and says that a skilled artisan would reasonably expect to succeed in achieving those desirable ADME properties in the body. I think that the unpredictability of deuteration is set out in the prior art. It's set out in the declarations. The board did not referee that dispute. I understand that Insight says in its brief that it thinks it was clear that deuterated ruxolitinib would display these properties, that a skilled artisan would be able to foresee that. But you'll see in the brief that there are no citations to the board's findings on that. Isn't this a matter of degree? Almost all chemistry is unpredictable in some sense, but that's not alone enough to render things non-obvious if there's at least some degree of certainty. Isn't that right? Some degree of certainty. I think that's the important part of your question. Why doesn't the concert backgrounder give that teaching and also the motivation in that here's this, I mean I think it's the business plan, right? We're going to take previously known compounds and deuterate them and some of them might work, some of them might not, but here's how you try it and then you have the additional Schilling reference which teaches you specifically which hot spots to look at on this particular compound. Why isn't that enough to at least give you a path to how to make this compound and then the concert backgrounder tells you why that's desirable? Isn't that substantial evidence for motivation to combine? It's not because of the, so your question was just about motivation to combine. Well, I'm sorry, and if you're talking about expectation of success, I mean why doesn't the concert backgrounder itself tell you that in some cases it's going to work and in some cases it's not, but when you put all these elements together, this is not, nobody has thought of deuteration before. That's well known, right? Well, deuteration as a scientific concept is known, but there was no approved deuterated pharmaceutical approved for use in the human body at this time, so there's still much uncertainty about how these drugs would perform in the body and so on the backgrounder, I mean a statement at page 1740 of the appendix, right in the backgrounder that says that how they perform cannot be predicted a priori. It's an important caveat in the backgrounder that the board doesn't take adequate account of. On the previous page, right at the bottom, where the backgrounder is talking about the potential, the potential to achieve these desirable properties, speaking broadly across the category of deuterated products, and potential is what the board quotes twice, but it never follows through in establishing whether you would expect deuterated ruxolitinib. Now about the hot spots, it's true that there is the publication in identifying the hot spots for ruxolitinib, but that's the point of concert's evidence that just knowing the hot spots doesn't tell you how this is going to perform in the body, precisely because when you deuterate a compound, it may actually shift the location of the drug's metabolism in the body. That is something that the board did not address at all. I guess what I'm struggling with here is this seems a pretty, it seems like everything that's needed to know to make this drug is out there in the prior art, and the only question is whether somebody would have expected it to succeed in demonstrating beneficial characteristics, but that's never going to be known until you just actually do the process and then test it, right? So under your theory, even if we have a known compound, we have a really well-known, easily done, and if you disagree with these facts, just assume it's a hypothetical, a really well-known method in the prior art to how to perform the deuteration, and a specific reference telling you where you do the deuteration. It doesn't even have to be for this compound. It's for any compound. Is your position that unless you know with some degree of certainty that it's going to have increased beneficial results, even if everything else is obvious, it's still unexpected results? So more is known today than was known in 2012 about deuteration, so that's part of my answer, and I think I'd call the court's attention in particular to the points about 95-65 from our expert about how little was known from in vivo testing. In other words, there were examples of in vitro testing. Okay, I get that, but what I'm struggling with, and I'm trying to find the divide on it, is whether you're making a legal argument or a factual argument, because I think you have an uphill battle if it's a factual argument, but it seems to me you're making a legal position that just knowing the process, the compound, and where on the compound to target is never enough as a matter of law. Is that the argument you're making? No, I'm not saying that that's never enough as a matter of law. What I'm saying as a matter of law in this case is that the board just looked at whether you could make the compound. That's it. In other words, it never looked at whether you would reasonably expect it to display these properties in the body. So I think that it would vary from case to case about whether the patent challenger could show a reasonable expectation of success. We're not asking for some legal rule about deuteration. What we are asking for is for the court to say that it requires more than just you could deuterate the compound, and the compound as a class would display the potential for desirable effects in the human body. But again, that's getting back to what I'm struggling with, is before you actually do it, you're not going to know whether it works or not. And reasonable expectation of success doesn't require absolute certainty. We're not challenging that. So what would that evidence look like, that it's in every single case before you make it, you're not going to know whether it works or not? Where's the line between that as an accepted fact and what's enough to show that it's expected results instead of unexpected results? Well, I'm not sure what the evidence would show today with priority date in 2023, but at the time of the priority here, not that much was known. I think more would have to be known about how a particular class of drugs would perform in vivo, as to which there was no evidence. And in particular, some of the examples that Insight itself cited as examples of well-characterized products that had hotspots, we put in evidence before the board that once you test those products in vivo, they have unpredictable effects and sometimes actually go in the other direction from what you'd expect. We're not asking the court to referee that here, but we are asking you to tell the board that it should have refereed that, because the board did not do so. Can we come back to what has to be shown for reasonable expectation of success? You rattled off a list of cases. Your friend has talked about intelligent biosystems. They say we made a distinction there between motivation, where you can look at what the beneficial properties were, and reasonable expectation of success, which they say is limited to just what's claimed. Why is their reading of intelligent biosystems wrong? So two things about intelligent biosystems. One is just the factual point that it's a method claim. It doesn't deal with the question of how to deal with compounds in this lead compound context, which is what the court's looking at and what the cases that I've rattled off are, actually dealing with compound claims. But even if you took intelligent biosystems as sort of resetting the scoreboard and setting out the controlling analysis, what's important to note is that intelligent biosystems in that case said, OK, reasonable expectation is set, but in that case we're going to look in the motivation bucket at this same category of stuff. It says it would just say that then that expectation would be central to motivation. Central is the word from the case. So it is less important to us which bucket you put the unpredictability of due duration in. We think that the best way to read Takeda and similar compound cases is that it belongs in reasonable expectation. But I think even if you looked at intelligent biosystems, it has to be resolved somewhere whether you would expect the desirable properties on the priority date. Because if you don't, maybe you could make the product, but this court in reasonable expectation cases has always said it's a matter of would, not a matter of could. And the board here only answered the question of could. Can I just say one thing about Longfelt Need and then try to save my remaining rebuttal time? That really is just that Longfelt Need, none of this court's pharmaceutical cases, all of which say that the right way to look at Longfelt Need is on the priority date, none of them has ever required that the product have achieved FDA approval on the priority date. That's never happened. This court has regularly sustained showings of Longfelt Need when there's something like a 15-year gap, as in Procter & Gamble, between when the patent application is filed and when the product actually comes on the market. So in this case, the board did not referee whether there was a Longfelt Need. It just said, as a legal matter, we're not going to look at it because this is mere potential. Well, potential is exactly what this court has looked at, like, for example, the FDA Fast-Track designation, which is exactly what this court cited in the ADAPT v. Teva case as an indication. We have that, too. The board should have looked at that. Unless the court has further questions, I'd like to save my rebuttal time. Thank you. Please, the court. Mark Feldstein on behalf of the Pelley Insight. The case really is very much a factual case based on the court's findings, and in terms of structural obviousness, it's hard to imagine a case that's closer than this to obviousness, and essentially, as you're asking Judge Hughes, we have everything short of anticipation here. There are three kind of key points in terms of what the board found and what Pat Oner has, in fact, conceded. Pat Oner has conceded that there's an expectation that deuterated buxolitinib would retain the important properties of selectivity and potency. They substantially ignore the motivation to create a new compound based on the expectation of similarity, but that's in this court's decision in Adventist, which Pat Oner actually recognizes, and the board's finding... How do you respond to Mr. Jay's argument that there was no fact findings of the board with respect to the reasonable expectation of success in terms of So, I think the board was right to say that reasonable expectation of success is a claimed subject matter. They went on to say that they further find, this is Appendix 32, by a preponderance of the evidence, that a skilled artisan would have had a reasonable expectation that synthesized ruxolitinib analogs may display superior properties based on combined teachings of Schilling and a concert backgrounder, as are explained in our discussion of motivation to combine. Is that enough of a show that it may display those properties? It's more than enough reasonable expectation of success because the expectation of success as per intelligent biosystems is that of the claimed subject matter, and even if it were a requirement to have an expectation of success for what the motivation is in terms of it is enough because potential motivation is enough. It's recognized in the Belden case. You can't require absolute predictability. That's the Pfizer case that a patent owner essentially doesn't respond to. So yes, an expectation of potential improvement is enough for an expectation of success were expectation of success to incorporate the motivating properties. When I was reading the board's opinion, at one point I thought to myself that the board really confused the two prongs, the motivation and the reasonable expectation of success. What's your comment on that? I think it's the patent owner that tried to confuse the issue about motivation and expectation of success, and the board did its best to respond. It said directly that it disagreed with the patent owner that expectation of success requires any properties, and in terms of motivation, it found specific reason why a person of ordinary skill would deuterate ruxolitinib. They would deuterate it to obtain a compound with similar properties, potency and selectivity. They found a second reason to deuterate ruxolitinib, to have the potential to improve its pharmacokinetics. They found specific reason, specific motivation to do it at specific hot spots based on the teachings of Schilling and the backgrounder combined. To the extent there was confusion between motivation and expectation, I think the board did lay it out plainly in its expectation of success argument that in the first instance expectation of success as intelligent file systems is the claim convention. It's met here. There was no dispute about being able to synthesize and prepare the compound, and then the board went on to say, even if you incorporate motivation, we find the expectation for potential improvement as well. Mr. Jay distinguishes intelligent file systems as being a method case. What do you say to that distinction, and do you cite cases with new compounds where we've made the dividing line between reasonable expectation of success and motivation that you want us to agree to here? Sure. I don't think there can be a separate area, a separate law for what reasonable expectation, the scope of reasonable expectation of success for any patent. That intelligent file systems has to speak to patent law as a whole. It can't be a special rule for expectation of success for chemical compounds. I think intelligent file systems' explanation that sometimes motivation or sometimes the motivating factor in the expectation bleeds into and overlaps with the motivation to make the modification, and I think if you read Takeda, for example, in that light, the question that's being addressed is the fact finding from the district court is whether or not there was a motivation to modify the prior art compound, and they find that there was no motivation because you wouldn't have had any reason to do it. You wouldn't have expected lower toxicity. While some of the compound cases do use the words reasonable expectation of success, in each one that I've looked at is in the context of is there a motivation? Is there a finding on motivation? We agree or disagree that there was a motivation. And so I don't see any cases that say separately an expectation of success for claim properties. There's the Sanofi case on bisphosphonates where they do address expectation of success, but there it seems, in my reading of cases, it seems that there may have been no expectation of success to actually be able to make the bisphosphonate there. I don't see any inconsistency between the statement of law as set forth in intelligent biosystems and the lead compound cases like Takeda or Aventis that work through whether or not there's a reason to make the modification. Here there was a reason to make the modification and that reason wasn't hypothetical or artificial, that reason was exactly what Backrounder taught you, deuterate the hotspots and Schilling telling you exactly where that is for deuterated ruxolitinib and then a whole host of chemistry telling you that for this type of molecule, with this type of metabolism and this type of oxidative metabolism, you should actually expect reduced metabolism and kinetic isotope effect. I have some concern about the secondary considerations. You make the argument about whether the one compound is commensurate with the scope of the claims. That didn't appear to be an issue that was resolved by the board. Is it right that the board didn't resolve it, and if so is that an issue we can decide in the first instance? Here you can decide it, your honor, because there's no disputed facts on whether or not the claims cover multiple compounds. There's no disputed facts on that some of the claims don't even cover. Sure, but the compound that got all the attention it could be representative of the full scope of the claims. How do we know that it is or isn't? There's no evidence below and there was no argument below and that is representative of any other compound. In fact, what Padnone argues is that the metabolism is unpredictable on a compound by compound basis and so they cite Victronics in their reply to say that this court can't decide things where there's substantial evidence in dispute and need for weighing. There's no substantial evidence in dispute or need of weighing to know that the CTP 543 is not even in the scope of some claims and is not so extensive with the scope of any claim. I think they're further arguing that in your petition you only put maybe three compounds at issue and therefore they were entitled to respond at that level and not worry about the full scope of their claims. What's wrong with that argument? I think it's just wrong as a matter of law. I find it a surprising argument. We can show obviousness by showing that any subject matter within the scope of the claim is obvious. To show that a claim is non-obvious based on sector considerations, the burden is on the patent owner to establish nexus and commence written scope. They have to establish that the full scope of the claim is non-obvious based on objective judicia. We can show obviousness based on any one point within the claim. I'll just mention on the long felt need, I think that was raised in Sun's opening remarks and it's a focus of their brief, that they continuously characterize what the patent office did as requiring FDA approval. It's pretty quick to read that that's not stated anywhere in the board's findings on why they found an absence of Sun having established that it met a long felt need. They said it was premature, there were admissions from counsel at the oral argument. This part troubles me a little bit because even though it doesn't seem like they went all the way in saying you have to get FDA approval, it does seem to suggest that they required something more than potential to treat the product. Potential to treat the condition, potential to treat the condition is not good enough to satisfy a long felt but would almost never be satisfied in a pharmaceutical case because you would be patenting it before you know whether it's really going to work necessarily. That's another way of saying I think that it's obvious when you're trying to patent it and it is obvious when you're trying to patent it and if later in time you can develop objective indicia that are not potential but actually showing you met a long felt need, good for the patent there but you can't get a patent today on what speculative objective indicia you might develop later and if you don't have that objective indicia, if you don't have having met a long felt need, you can't rely on it. What if you come in and again this is hypothetical because I'm sure this is not necessarily the case that you patent this new deuterated compound and you've done enough work somehow either initial trials or just because you've done this in other areas with other kinds of drugs, you say well this is probably going to work and here's our evidence for why this is probably going to work. Would that be enough to satisfy a long felt need? I don't know, I mean I'd have to think about what the specific facts are. Here it's notable that the patent doesn't ever anywhere address a long felt need for a treatment for alopecia areata. It doesn't teach using the compound for alopecia areata. It doesn't show any efficacy in alopecia areata. Are there other claims in this patent or patent family that deal with specific treatment for alopecia? There's a later patent filed four years later that a patent owner mentions that there's a separate PGR that's currently on appeal where later they claim the use of the drug for alopecia areata. But it's not here, it's not this case. What happened in that case? I'm sorry? What happened in that case? There, unfortunately and we'll be before you again on this and we'll be the appellant. Those claims are valid. There the court found that the board found that you would be motivated to use this drug but that we hadn't shown that you'd be motivated to use only this drug or preferably this drug which we think is wrong under Novartis. Is that happen to be the case that's cited at page two of the gray brief? Your other litigation with them? It is, it is the TGR. They of course bring it to our attention. I think evidently the board said something there about deuteration of compounds was not predictable. Should we make anything of that in this other case that you all have? I don't think that I don't think it was proper to cite that here as evidence in this case so I don't think that it pertains but to the extent you consider it, the board found there the 149 patent the patent that's subject to this case is the prior art in that case and the CTP 543 compound 111 in this patent is fully disclosed and the question is whether you would use it to treat alopecia areata or not and so it's a separate question than whether the compound is obvious based on on the background and shilling and prior art. Thank you. So in terms of long felt need, back a little bit to what you're asking Judge Hughes the problem or the context here is that there were prior treatments for alopecia areata so ruxolitinib itself was taught for alopecia areata and what Concert Below, Sun Below tried to argue was they need to argue that there was some long felt need that hadn't already been met by ruxolitinib and so the way they framed it over and over again was oh there's a need for FDA approval and that carries through the briefs it carries through in the amicus brief that there was a need for an FDA approved drug and that, the problem for Sun here is that there's no way they can define a long felt need that they met that ruxolitinib doesn't already met. If you define it as a potential utility in alopecia areata, ruxolitinib was already taught for that as was and so the potential that they show isn't enough, especially where there wasn't need for a potential. That was already taught by ruxolitinib. They continuously framed it as something higher and what the board found is that they didn't establish their potential. Anything but potential. Okay, thank you. Thank you. Lee? I'll give you a little bit of your rebuttal. We asked a lot of questions. Thank you, Your Honor. I appreciate that. Just a couple of points on reasonable expectation and a couple on secondary considerations. Just to run through the cases on whether Takeda and Procter & Gamble, which is I think what my friend meant to say, are talking about reasonable expectation or motivation. And again, I don't think as long as someone answers the question in one of the two buckets, I don't think it matters, but analytically, Takeda says, no reasonable expectation that pioglitazone would possess the desirable property. Procter & Gamble in a paragraph at 996 headed reasonable expectation of success. No reasonable expectation in 1985 that resedronate would be a successful compound. Those are compound cases and those are not claimed properties but the court is nonetheless looking at whether the desirable property would be expected to be. Why do you think we said that? It seems odd to me that you have to show that it would work for something that's not in the claims when all the claim is to the compound. Why shouldn't you just show that somebody could reasonably, based upon the prior art, make the compound? I know we're bound, but I'm just curious. Yeah, but I think it's all about would versus could. It's 100% about would versus could. There are lots of things that a skilled artisan could do with the synthetic chemistry at their disposal. But why wouldn't that come under motivation rather than expectation of success? Right, so I agree that if motivation you could look at it in motivation and say, well, I would like a compound that displayed these properties. Would I expect this compound to be such a compound? That's one way of looking at it. Another is to say here's a compound with the potential. Shall I make it? Well, you're going to ask whether you would reasonably expect to succeed. Again, not certainty, but at some point in one of the two buckets, you're going to look at whether this is not just a thing that you could do, but whether you would reasonably expect it to have the desired properties. And that is the finding that the board never made in this case. But what is it that you have to have a reasonable expectation of success? Is it the synthesis of the compound? No. Or the synthesis of a compound that performs and provides the properties that you are looking for? Right, you'd have to, we think the right way to look at it is that you would expect it to have at least one of the desired properties that is motivating you to pursue the new compound, right? And that's What if the only thing that's motivating you is just the idea of making the compound? So I think in this court's similarity cases, it is still said that there still has to be a reason or a motivation to pursue the things that are similar. In other words, you don't just go out This is a little bit about what we were talking about when you were up the first time is I'm still a little confused about what that needs to be. Because if you have this teaching from the concert prior art, here's the way you do it, and it could have benefits. Why isn't that enough to say, well, here's this compound. Let's try to deuterate it because it might work. Isn't that in itself, it says sometimes it'll work and sometimes it's not. Isn't that enough for both motivation and a reasonable expectation of success? It doesn't have to be, it will work. We know this works and it's beneficial in some cases. It doesn't have to be certain, but that's not enough precisely because and I think in 2012 as our expert explained at 95-65 95-73-74 and those are the best passages to look at, that the points that you built into your question, Judge Hughes, those were not enough to make you conclude that a deuterated compound would work in the human body. There was very little in vivo evidence and no approved deuterated compounds at that time. No deuterated drugs had ever been approved at that time. Of course, also at that time, can I just do a little bit on long-felt need? I appreciate that very much. The commensurateness point was not resolved below and one important thing to point out about that, Judge Stark, is that the board cited the fact that it wasn't resolving the commensurate question for why it was not looking at our substitute claim motion. It said, well, we don't need to address that because we have resolved the secondary considerations on a completely different ground, i.e. the Galderma and FDA approval, really the Galderma percentage point that we agreed. For this court to then affirm that on some alternative ground when the board didn't reach our motion to amend because it was going off on this other ground, I think that would not be good use of the court's discretion. Ultimately, there is a factual dispute on this point and if you send it back, the board would have the opportunity to look at that. One other thing the board would have the opportunity to look at, if the record were reopened, this is a final written decision from four years ago and a lot has happened with this product since then. We'd have the opportunity to supplement the record with our phase three data, with the breakthrough designation of FDA. Thank you, Your Honor, very much. Thank you. The case is submitted.